NEW YORK,
Sept. 1826.

Gallatian
v.
Cunningham.

JOHN I. GALLATIAN, ABRAHAM WOOD, and JOHN ERWIN,
    appellants, *against* CATHARINE CUNNINGHAM, re-
    spondent.(*a*)

If a purchaser rest his claim in a court of equity, on the fact of being a *bona
    fide* purchaser, he must deny notice, fully, positively and precisely, even
    though it be not charged on the other side.

He must also deny all knowledge of facts charged, from which notice may
    be inferred.

If he do not thus put the notice in issue, proof is inadmissible.

If he rely upon want of notice in another, from whom he purchased, he must
    still aver the fact by plea or otherwise.

A cross-bill is in nature of a defence; and cannot introduce new and distinct
    matters not embraced in the original suit.

The statute concerning the partition of lands, does not apply to a case where
    all the parties are infants. Per WOODWORTH, J.

Proceedings to sell in partition, under the act of 1801, and the amendment,
    (sess. 34, ch. 33,) are *coram non judice* and void, unless proof was given
    to the court that the lands could not be partitioned without great prejudice
    to their interests. Per WOODWORTH, J.

[*362]   *Circumstances, from which fraud in procuring and conducting such a sale
    may be inferred, stated per WOODWORTH, J., who pronounces it a ground
    for setting aside the sale; and so *semb.* that the proceedings of a court of
    competent jurisdiction may be avoided for fraud.

The distinction between jurisdiction of fraud at law and in equity, is, that
    in the former court it must be proved, and cannot be presumed: whereas
    in the latter it may be presumed. Per WOODWORTH, J.

It is a general rule, that trustees, agents, commissioners and assignees of
    bankrupts, solicitors to the commission, and auctioneers, (*b*) are incapable
    of purchasing the subject of their charge. Per WOODWORTH, J.

Said of a trustee and attorney. Per COLDEN, senator.

The rule extends to a guardian *ad litem* in partition. Per WOODWORTH, J.,
    and COLDEN, senator.

An exception is, where a special order of court is made, allowing the trus-
    tee, &c., to purchase. Per COLDEN, senator.

A void purchase is incapable of confirmation; otherwise, if merely voida-
    ble.

Where one claims under a purchaser without notice, such want of notice
    will protect the second purchase. Per COLDEN, senator.

To set aside a fair sale to the trustee, guardian, &c., of the subject of his trust,
    guardianship, &c., the *cestui que trust*, ward, &c., must apply in a reasona-
    ble time. Delay operates as a confirmation. Per COLDEN, senator.

(*a*) This case was decided at Albany, December, 1825.

(*b*) *Oliver* v. *Court*, 8 Price, 127, S. P.

APPEAL from the court of chancery. The cause came here upon facts, the substance of which will be found stated in the report of the cause in the court below, by Mr. Hopkins. (1 Hopk. Ch. Rep. 48.) The points and arguments of counsel, with the authorities, are also stated there, so far as it is deemed important to notice them. I report this case more from the conviction of the great value which the opinions of WOODWORTH, J., and COLDEN, Senator, the only Judges who delivered opinions, must be to the profession, than as settling any point by adjudication, except perhaps as to the answer which a *bona fide* purchaser must put in, to protect himself in the possession of a title voidable in the hands of the one from whom he claims. It will be seen, that although their conclusions were the same in which the court concurred, yet their premises being different, and the affirmance being general, concurring with neither distinctly in their reasoning, the positions advanced in the opinions cannot claim to be authority, farther than as the *dicta* of learned judges, who have thoroughly and ably examined the subject upon which *they speak, and who furnish the test of principle and authority for what they say.

<div style="text-align: right">NEW YORK,<br>Sept. 1826.<br>Gallatian<br>v.<br>Cunningham.</div>

[*363]

The case will also be found briefly stated in the opinion of WOODWORTH, J.

SANFORD, Chancellor, assigned the reasons for the decree appealed from, as in 1 Hopk. Ch. Rep. 54 to 59, S. C.

The cause was argued here by

*S. S. Gardner* and *Talcott*, (attorney general,) for the appellants; and

*S. M. Hopkins*, for the respondent.

WOODWORTH, J. Henry Cunningham, the father of the respondent, died intestate in the year 1798, leaving three infant children, and a valuable estate in lands, consisting of two military lots containing 1,200 acres, and a farm in

Statement c. the case.

NEW YORK, Orange county, containing about 40 acres. It appears that
Sept. 1826. there was no necessity for selling the lands, for the pur-
Gallatian
v. pose of paying any debts, nor for the maintenance and
Cunningham. education of the infants. Margaret Cunningham, the eld-
est child, attained the age of 21 years, in September, 1812.
At the May term of the supreme court, in that year, and
while all the parties were infants, proceedings were insti-
tuted by the agency of William Erwin, in the name of
Margaret Cunningham as petitioner, against the present
respondent and John Cunningham, her brother. The os-
tensible object was to make partition; but the real object,
as appears to me, after an attentive consideration of the
case, was to effect a sale of all the real estate the infants
inherited from their father; and by management and
fraud, practised under the forms of law, to strip them of at
least a portion of their patrimony.

The statute      Before I proceed to examine the various questions rais-
concerning the
partition   of ed, I will submit my ideas on one point, which was not
lands, does not much pressed on the argument in this court. The ques-
apply to a case
where all the tion is this: Does the statute, authorizing the partition of
parties in in-
terest are in- lands, apply to a case where all the parties in interest are
fants.           infants? The proceedings in this cause were under the
act of April 7th, 1801, (1 K. & R.'s Ed. 542,) and the
[*364]       *subsequent amendments thereto. The 1st section of the
act declares, that it shall be lawful for any one of the par-
ties interested, to present a petition describing the lands,
and setting forth the rights of all the parties; and praying
that a division be made by commissioners. It directs the
manner of service, which shall be on all the parties con-
cerned, and on the guardians of such as are minors. It
seems to me that this section proceeds on the ground that
the petitioner is an adult. He is to give a statement of all
the rights and titles of the parties. An infant cannot be
deemed competent to perform this; and there is no provi-
sion that it may be done by guardian; but as to infant de-
fendants, it does provide, that service of the petition may
be made on the guardian. If the legislature had intended
to include infants under the words, "any one or more of the
parties," I apprehend the act would not have been silent

as to the exercise of this right by guardian. The 6th sec-

tion, in my view, fortifies this construction. It declares
that it shall be lawful for the court, for any of the purpo-
ses intended by the act, to appoint guardians for such mi-
nors, and take sufficient security from the guardian for the
faithful discharge of the trust, and to render a just and
true account of his guardianship. It is evident that this
section has reference only to the case where infants are
obliged to submit to a partition, in consequence of proceed-
ings commenced by a party in interest of full age. The 1st
section allows service to be made on the guardians of such
of the parties as are minors; and the word "minors" is
not again used in the act, until it occurs in the 6th section.
There the power is given to appoint guardians: for whom?
Not generally, for any of the parties in interest, who are
under age, but for "such minors." The sentence cannot,
grammatically or according to common sense, apply to
any other description of persons, than those described in
the first section, which are infant defendants only. I think
this goes far to show the sound construction to be put on
the act; for it will be conceded, that if an infant is autho-
rized to become a petitioner, a guardian for the protection
of *his rights is equally necessary, as in the case of in- [*365]
fant defendants. The omission to provide for it shows,
manifestly, that the act was not intended to apply to such
a case.

This construction is supported on various other grounds.
Generally speaking, there is no benefit arising from a par-
tition, so long as all the parties are infants. During minor-
ity, they are incapable of aliening, whether they hold
jointly or in severalty; but they are all entitled to a just
proportion of the rents and profits. What then is the use
of dividing the estates of infants in severalty? If done, they
are still incapable of exercising any greater power of con-
trol than before the severance. When any one of the
infants has attained full age, then the right to have par-
tition becomes perfect; and the fact that the other parties
in interest are infants, ought not, from the nature of the

NEW YORK, case, to form an objection. Then, and not till then, the
Sept. 1826,
statute becomes operative.

Gallatian
v.                It may be said that a sale of the whole, or a portion of
Cunningham.   the patrimony of infants, is sometimes necessary to provide
for their education and support. Be it so; a partition is
not required. During infancy, the rents and profits of the
estate of the ancestor are to be applied for the benefit of the
infants generally. They are entitled to participate equally;
and if, on application to the proper forum, a portion should
be deemed necessary to be sold for maintenance, it would
not be the share of one of the infants, but so much of their
undivided interest as the occasion required; so that no ad-
vantage can be derived from the partition of their estates.
The whole history of the law shows with what jealous care
the rights of infants are watched and guarded. On appli-
cation to the chancellor, affecting the disposition of their
property, every check that prudence can suggest, is inter-
posed for their protection. In no case can their real estate
be aliened, without some pressing necessity. The presump-
tion derived from this source is very strong, that the legis-
lature did not intend to depart from this salutary course,
when the act for the partition of lands was passed;
[*366]    and although the words of *the act are general, its spirit and
the mischief to be remedied are opposed to the construction
that infants are included.

This view of the subject acquires additional strength,
when it is considered that there is no saving or qualifica-
tion in respect to infants. The proceedings become final
and conclusive, unless reversed for error. Besides, the
power of selling, instead of dividing, is given whenever it
shall appear by proof, that a partition cannot be made
without prejudice to the owners. To see how easily
such a power may be abused, it is only necessary to look
into this cause, where it was pretended that two military
lots of 600 acres each, could not be divided among three
proprietors, without great prejudice; and on that allega-
tion the whole was sold.

For the purpose of placing this question in a still clearer
point of light, I will briefly notice the law relating to parti-

tion in England, and what was the law in this state until the passing of the first act on the 16th of March, 1785.[1]

At the common law, co-parceners were compelled to make partition, which might be done by writ *de partitione facienda*, or by proceedings in chancery. By the former mode, if the tenants appeared, the partition was conclusive, although all the parties in interest were infants or *feme coverts ;* but the appearance could not be compelled with certainty ; for process was by summons, attachment and distress infinite. If the proceedings were instituted in chancery, the partition might be made ; but infants and *feme coverts* were allowed, after disability removed, to question the justice and equality of the partition. An infant plaintiff, however, is always concluded.

Joint tenants and tenants in common were not, at the common law, compellable to make partition. The statute, (31 Hen. 8.) authorized it to be made in the same manner as between co-parceners; but did not provide any additional remedy in case of non-appearance. To remove this difficulty, the 8 & 9 Wm. 3 was enacted, and prescribed a *course of proceeding variant from the common law process; which being had, an appearance might be entered, and the partition perfected ; but this statute contained a proviso, that in all cases where judgment was rendered by default against infants or *feme coverts*, one year should be allowed after the disability removed to object to the partition. Thus stood the law in England, at our revolution ; and it continued to be the law here, until the 16th of March, 1785, when the first partition act was passed. This is evident from the fact that the law relating to partition in England was the law of the colony of New York, and by the 35th section of the constitution, it is declared, that the common law and statute law of England, that formed the law of the colony on the 19th of April, 1775, should continue to be the law of this state, subject to alterations by the legislature.

It is then perceived that effectual and conclusive parti-

*Margin notes:*
NEW YORK,
Sept. 1826.
Gallatian
v.
Cunningham.

How this was at the common law.

History of the statutes of partition, English and New York.

[*367]

[1] See Waterman's American Chancery Digest, vol. 3, tit. *Partition.*

NEW YORK, tion could not be made in certain cases, if judgment was
Sept. 1826. rendered by default. When all or any of the parties were
Gallatian   infants, it was liable afterwards to be reviewed. To insure
v.           that alternative, it was only necessary to let such default
Cunningham.  be entered; and that was altogether at the option of the
infant, or *feme covert;* and in case all the parties were
adults,. the remedy provided by the 8 & 9 Wm. was ineffec-
tual. It declares after attachment returned, and affidavit
that notice has been given of the writ of partition to the
tenant, to the action, and a copy left with the occupier,
or if not to be found, delivered to the wife, son or daugh-
ter of the tenant, being of the age of 21 years, or to the
tenant in actual possession, by virtue of any estate of free-
hold or for term of years, at least 40 days before the return
day of the attachment; then, if an appearance shall not be
entered in 15 days after such return, the court may pro-
ceed to examine the title, give judgment by default, and
award a writ to make partition. It follows, that if the per-
sons upon whom notice is to be served, cannot be found,
the proceedings are at an end.

Immediately after the revolutionary war, when the
greater part of this state was a wilderness, and its cultivation
[*368]        *and improvement an object of the greatest importance, the
legislature applied a remedy to the extent that the exigency
required. The recital to the act of March 16th, 1785,
states, that tracts of land held by joint tenants, tenants in
common and co-parceners, cannot by law be divided by
reason of the absence, infancy or coverture of some of the
proprietors. It was so. I have shown that absence was
an insuperable barrier; for, in that case, notice could not be
served; and as to infants, it depended on their volition,
whether to suffer judgment against them by default or not
It was therefore correctly said in the recital, that in case
of infancy and coverture, land cannot be divided, that is,
with certainty and conclusively, when the validity of the
partition depended on a contingency.

The preamble is the key to discover the intent of the
statute. Why is it confined to the infancy of some of the
proprietors, instead of saying where all or any are infants?

The answer is plain and palpable. It was useless to com- pel partition when all were infants; it would not benefit the agriculture of the country; for the incapacity of the infant is the same after as before; nor could any detriment arise, by suffering their lands to remain in common until some one attained full age. The legistature, therefore, designedly, and I think wisely, provided for effectual partition, when a part only of the owners were infants. The occasion did not call for more than this; and to this the preamble is directed. I cannot, therefore, doubt as to the construction of the act. It does not, nor was it intended to apply when all the parties are infants. The statute of 1801, varying only the form of proceeding, must receive a similar construction. I think the books very clearly sustain the view of this case, which I have so far taken. (16 Vin. 221, (E 1.) pl. 10; id. 227, pl. 10; Co. Lit. 171, a. b; id. 168, b; 5 Vin. Suppl. 336; 2 Ves. Jun. 124.; 1 Laws N. Y. (J. & V's. ed.) 202; 2 Com. Dig. 647. (4 E.) Ę id. 168, (C. 9.) Ambl. 197; 3 Bac. Abr. 702, 703.)

The statute of 1801 may, and I think ought to be considered, as a substitution merely for the former act. It is *founded on the same reasons, and has in view the same [*369] ends, variant from the former act, principally in the form of proceeding; the remedy by petition and notice, to which the parties might plead, being a manifest improvement upon the former system.

It is an established rule, that all acts *in pari materia* are to be taken together. So, also, if anything contained in a subsequent statute, be within the reason of a former statute, it shall be taken to be within its meaning. (6 Bac. 382; Lord Ray. 1028.)

It cannot be denied, that the same reason existed for the exception, when all were infants, at the time of passing the last act, as at any former period. It would, therefore, be doing violence to well settled rules of construction, to say, that because there is not an express exception in favor of infants, therefore they shall be included within the general words.

In the cause of *Jackson* v. *Woolsey*, (11 John. 446,) the

NEW YORK,
Sept. 1826.
———
Gallatian
v.
Cunningham.

question was raised and argued, whether the statute author-ized a partition during infancy, but in that case one of the petitioners was an adult; so that the point now under con-sideration was not expressly decided. But it is very evi-dent the court were of opinion that the statute did not ap-ply when all the parties were infants. In the opinion de-livered, the court observe, that the fact that one of the pe-titioners was an adult, put the objection at rest. If, then, that fact rendered the proceedings valid, there cannot be a doubt, that in the absence of it, they would not have been considered as within the act. It seems to me, therefore, to follow, that the proceedings commenced in the name of Margaret Cunningham, an infant, were void and *coram non judice;* and consequently, the appellants did not acquire any interest in the lands, by virtue of the mortgages and conveyances made by William Erwin, and that, for this cause, their bill was properly dismissed.

*The proceed-ings in parti-tion were co-rum non judice.*

If, however, it be admitted that the statute applies to this case, the next inquiry is, whether the proceedings under it were not irregular, and therefore void.

*Whether pro-ceedings were regular.*

[*370]       *The act of March 8, 1811, (sess. 34, ch. 43,) declares, that if the commissioners shall report that the lands are so circumstanced that a partition cannot be made without great prejudice to the owners; and if it shall appear by satisfac-tory proof to the court, to which such report shall be made, that the lands cannot be partitioned among the owners with-out great prejudice to their interests, the court shall order the commissioners to sell. Before the passing of this act, no such authority was given. The power of the court was restricted and limited. Satisfactory proof, then, must be adduced. In the absence of proof, the question is not be-fore the court. The distinction here arises between pro-ceedings void and voidable. If proof, *evidently defective,* had been exhibited, and the court had passed upon it and deemed it sufficient, that would have been error; but that cause would not have defeated a purchase, in other respects valid. When the court undertake to dispense with a con-dition precedent, upon which solely their authority is found-ed, then the act become void; for the statute must be con-

*They were void, because no proof given within the sta-tute, sess. 34, ch. 33, that a sale was neces-sary.*

strued as prohibiting the exercise of any authority over the subject, until the preliminary step has been taken. It is not pretended that there has been a compliance with the statute in this respect. The rules in partition ought to be moved in open court. This amendment of the statute may not, at the moment, have been adverted to. I think, however, the presumption more natural, that the rule was handed to the clerk to be entered without the inspection of the court, rather than that they sanctioned the rule. Whether with or without their approbation, the result is the same. There was no authority to sell the land.

<div style="float:right">NEW YORK,<br>Sept. 1826.<br>————<br>Gallatian<br>v.<br>Cunningham.</div>

The next question is, whether, on the supposition that a partition might legally be made, the proceedings were not fraudulent; and secondly, if not, whether William Erwin was not a trustee, and, therefore, could not purchase?

<div style="float:right">Whether proceedings were fraudulent, or Wm. Erwin a trustee.</div>

With respect to fraud, the distinction between legal and equitable jurisdiction, is this: that at law it must be proved, not presumed; so that equitable jurisdiction may be exercised, *when a court of law could not enter into the question. (18 Ves. 483.) A variety of cases have been decided, and relief afforded in equity, where, from the nature of the transaction, and the situation of the parties, fraud and imposition might be presumed. (3 P. Wm. 139; Pow. on Con. 31.) Thus, in *Chesterfield* v. *Jansen*, (2 Ves. 155,) lord Hardewicke describes one species of fraud, which may be presumed, from the circumstances and condition of the parties contracting; and this, he says, goes farther than the rule at law. Let these principles be applied to the case before us. By the pleadings, it does not appear, nor is it any where alleged, that William Erwin had ever been appointed guardian of these infants, until May, 1812, when application was made for partition. It is true, the notice served in March, 1812, is directed to William Erwin as guardian, but that fact is not put in issue. If he was not guardian at that time, he was a stranger and intruder. If he was guardian, he violated his trust, as will be shown in the sequel. The father of the respondent left to his three children a valuable real estate, not necessary to be sold for the payment of debts, or for their education or mainte-

<div style="float:right">Distinction between legal and equitable jurisdiction of fraud.<br><br>[*371]</div>

<div style="float:right">Evidence to warrant inference of fraud.</div>

nance; 1200 acres of wild land in the military tract, increasing in value yearly, we have a right to presume from its location, and the rapidly advancing prosperity of that part of the state; 40 acres with buildings in the county of Orange. Erwin applied to Margaret, then nearly 21 years of age, advised to a division, and prevailed on her to call on a lawyer, and sign the necessary papers. No suggestion is made that a sale is even in contemplation. He becomes the actor and director of Margaret, and at May term, 1812, procures himself to be appointed guardian for the defendants. On the 7th May, the petition is filed. On the same day he files a plea of confession, and obtains a rule that partition be made. The commissioners appear to have been in waiting, and are sworn on the 7th May. The next day they report that a partition cannot be made without great prejudice, and thereupon a rule was entered directing a sale, *which was made on the 20th of July, 1812. After this statement, can any one doubt what was the real inducement of Erwin to solicit Margaret to apply for a partition? Did it first occur to him on the 7th May, that a sale would be necessary? The proceedings followed each other in such rapid succession, as to make it evident the discovery was not then first made. No; the plot then began to develope itself. It discovers the cunning and management by which this farce had been gotten up. Every thing was prepared for immediate execution. Forbes, the surety for Erwin, is appointed one of the commissioners. The knowledge of this fact was undoubtedly withheld from the court. If known, he would not have been appointed, for he did not stand indifferent. The less produced by the sales, the less his responsibility. The other two commissioners are near relations of Erwin; a circumstance, perhaps, not material in a fair case, but suspicious when connected with other facts disclosed. All these arrangements were admirably calculated to effect the ultimate object, to enable the guardian to become the purchaser, without advancing in the first instance a cent. He, as guardian, was entitled to receive from the commissioners the money produced by the sales. He intended to purchase at auction the wild lands,

[*372]

distant 300 miles, which could scarcely fail of being sacrificed; and profit by their sure and certain rise. This is the picture presented. Such are the features of this case. A more palpable fraud attempted to be sanctioned under the forms of law, has never fallen under my observation. For this cause I hold, that so far as William Erwin is concerned, the proceedings are void.

NEW YORK,
Sept. 1826.
———
Gallatian
v.
Cunningham.

Concludes that
proceedings
are void for
fraud in fact.

If the proceedings had been thus far regular and fair, Erwin was a trustee, and could not profit by the purchase of the lot of 600 acres. He gave bond for the faithful discharge of his trusts, and received the money arising from the sales. Erwin must be considered as having caused the lands to be sold, and the *cestui que trust* is entitled, as of course, to have the purchase set aside. It is true, as a general proposition, subject to some exceptions, that trustees, *agents, commissioners and assignees of bankrupts, solicitors to the commission and auctioneers, are incapable of purchasing. The ground on which the disability or disqualification rests, is, that a person cannot be both judge and party. "No man can serve two masters." He that is intrusted with the interest of others, cannot be allowed to make the business an object of interest to himself; because, from the frailty of human nature, one who has the power will be too readily seized with the inclination to use the opportunity for serving his own interest at the expense of those for whom he is intrusted. A purchase by a trustee, whether for adults or infants, cannot be supported, although the estate be sold at auction, or before a master under a decree for sale. (*Yorkbuildings* v. *Mackenzie,* 6 Bro. Par. Ca. 42 ; 5 Vesey, Jun. 681; 1 Mad. 90; Sugden's Law of Vendors, 422, 427, and the cases there cited.) A very elaborate and learned review of nearly all the cases, will be found in *Davoue* v. *Fanning,* (2 John. Ch. 252,) where the general principle is examined and illustrated with great perspicuity, and to an extent which would seem to have exhausted the subject.[1]

W. Erwin was
a trustee, and
the sale should
be set aside for
that cause.

General rule
as to purchases
by  trustees,
&c.

[*373]

[1] A trustee cannot act for his own benefit in a contract on the subject of the trust. Thus, a trustee who purchases a mortgage or a judgment, which was a lien on the trust estate, at a discount, is not allowed to apply

NEW YORK,
Sept. 1826.
——————
Gallatian
v.
Cunningham.

·The next inquiry is, how are the appellants affected by the fraud of William Erwin, and the purchase by him as· a trustee? If they are fair purchasers without notice, and have brought themselves within the rules by which that

How the
appellants are
affected by the
fraud of Wm.
Erwin, or his
relation as a
trustee.

question is tested, they are not affected by the fraud or trust. The respondent filed a cross bill, stating the pro-· ceedings in respect to the partition and sale; and charges,· that the appellants were well informed of all the material facts and circumstances, and also, that Robert Wood and Charles Wardell, before and at the time they received· their mortgage, had notice. The appellants admit that Erwin was appointed guardian, and became a purchaser.· The language of the appellants in the first answer, is, that they cannot say whether Wood and Wardell had notice when the mortgage was given. In the second answer, they say they deny that, at the several times, they had actual·

[*374]

notice *of the proceedings, and of the claims of the respondents.

To make
out a bona fide
purchase, no-
tice must be
denied, posi-
tively, even
though not
charged. So
of every cir-
cumstance
from which it
can be inferred.

If a purchaser rests his claim on the fact of being an innocent bona fide purchaser, he must deny ·notice, even though it be not charged, positively, and not evasively. He must deny fully, and in the most precise terms, every· circumstance from which notice could be inferred. (Pre.· in Ch. 226; 2 P. Wms. 491; 1 John. Ch. Rep. 302; 3 id. 345.)[1]

such purchase to his own advantage, it enures for the benefit of the *cestui que trust*. *Green* v. *Winter*, 1 Johns. Ch. Rep. 27; *M' Clanahans* v. *Henderson*, 2 A: K. Marsh. 389; *Kellogg* v. *Wood*, 4 Paige, 578; *Parkist* v. *Alexander*, 1 Johns. Chan. Rep. 394; *Holdridge* v. *Gillespie*, 2 Johns. Ch Rep. 30; *Hart* v. *Ten Eyck*, 4 Johns. Ch. Rep. 104; *Davoue* v. *Fanning*, 2 Johns. Ch. Rep. 257; *Matthews* v. *Dragard*, 3 Desau. 25. Am. Chan. Dig., p. 428, sec. 537.

[1] Where a purchaser seeks relief from a court of equity, because he has purchased without notice, he must deny notice. So when he sets up by plea or answer a purchase without notice, as a bar to discovery or relief to which a plaintiff is entitled, he must be equally explicit in denying it. But where a plaintiff would convert a purchaser into a trustee, and seeks to charge him because he bought with notice, if the allegation of notice is not admitted, the plaintiff is bound to prove it. *McGahee* v. *Sneed*, 1 Dev. & Batt. 333.

· The ground on which an original purchaser with notice, is estopped in equity, is that the taking the legal estate after notice of a prior purchase or

It requires only a perusal of the case, to perceive that the appellants have not protected themselves, within this strict and salutary rule. The testimony of Wardell and Wood, as to their want of notice, cannot aid the appellants. It was not necessary for the respondent to make an effort to prove notice to them, for the reason, that until the appellants had explicitly denied knowledge on the part of Wardell and Wood, they could not avail themselves of this defence.

But it is contended, the respondent and Margaret Cunningham have confirmed the acts of Erwin, and cannot be permitted to impeach their validity?

With respect to the respondent, it is only necessary to observe, that the assignment of the mortgage to her, against Mattison, was taken while ignorant of her rights; and was received only as a collateral security. Her case, therefore,

*NEW YORK, Sept. 1826.*

Gallatian
v.
Cunningham.

The appellants have not brought themselves within the rule. Notice was not put in issue. Evidence concerning it, therefore, was inadmissible. As to the confirmation o. Erwin's acts.

equity makes the party a *bona fide* purchaser, and amounts to a fraud. In order to fix this fraud, however, the proof of notice must be clear. *Curtis* v. *Lunn*, 6 Munf. 42.

To make the plea of a *bona fide* purchaser without notice available, the notice, before the whole of the purchase money was paid and conveyance received, must be positively denied. *Nantz* v. *M'Pherson*, 7 Monroe, 599.

Such information as would put a prudent man on the search for the truth, is sufficient notice. Ib.

Want of notice in a purchaser is a matter of defence, which he must aver by way of defence, and establish by proof. *Galatin* v. *Erwin*, Hopkins, 48.

He must also deny all knowledge of facts charged from which notice may be inferred. And the denial must be full, positive, and precise. Ib.

If a vendee relies on want of notice in another, he must still aver the fact by plea or otherwise. Ib.

A defendant must deny all notice and every circumstance from which notice can be inferred, otherwise he will not be deemed a *bona fide* purchaser. *Pillow's heirs* v. *Shannon's heirs*, 3 Yerger, 508.

In order to protect himself as a purchaser, *bona fide*, the defendant must deny that he had notice of the complainant's equity, previously to the execution of the deed to him, and payment of the purchase money; and if he had notice before that time, he is bound by it. Ib.

A person claiming as a *bona fide* purchaser for a valuable consideration, must deny the fact of notice of a trust, and of every circumstance from which such notice might be inferred. *Murray* v. *Ballou*, 1 Johns. Chan. Rep. 566; *Heatley* v. *Finster*, 2 Johns. Ch. Rep. 158; *Murray* v. *Finster*, 2 Johns. Ch. Rep. 155; *Quære.* Am. Chan. Dig., p. 491, *et seq.*, Nos. 298, 299, 313, 314, 315 316, 317, 322, 323, 325.

NEW YORK, does not fall within any of the principles respecting confir-
Sept. 1826. mation. As to the other infants, Margaret and John, they
Gallatian are not parties in this cause, and cannot be concluded by
v. the decree. The fact is merely stated, that shortly after
Cunningham. the sale, Margaret received from the commissioners her
share of the purchase money, and that in 1816, John pre-
sented a petition to the chancellor, and received his share.
It is no where alleged or pretended, that either of them
had any knowledge of the fraud and trust, and that the
A void pur- proceedings of William Erwin were not entitled to the
chase is inca- sanction of a court of justice. Besides, the question of
pable of con-
firmation. confirmation applies only to the purchase by the trustee;
that being a subject of confirmation. If the previous pro-
[*375] ceedings *were fraudulent and void, it was incapable of
confirmation. In Cok. Lit. 295, b., the doctrine is laid
down, that a confirmation may make a voidable or defeasi-
ble estate good; but it cannot strengthen a void estate. (5
Vin. 389, (Y.) pl. 5, S. P.) Whatever these parties may
have received, a court of equity will compel them to ac-
count, when they appear to assert their rights to the real
estate of their father.

From the preceding view, it will be seen that the claim
of the appellants to attach their mortgages and conveyances
on two thirds of the lot, has no foundation to rest on. The
appellants, in judgment of law, acquired no title to any
part of the lot. The respondent here is acting on the de-
fensive. It is enough that she has shown the absolute nul-
lity of the appellant's claim. The question, whether the
court will decree that the whole lot is liable to her demand,
or one-third only, does not now arise. When the respon-
dent presents that question in the character of a plaintiff,
it will receive a decision.

For affirm- I am of opinion that the decree of his honor, the chan-
ance. cellor, be affirmed.

SUTHERLAND, J., expressed his concurrence in the result
of this opinion.

SAVAGE, Ch. J., not having heard the argument, gave
no opinion.

COLDEN, Senator.  The facts submitted to us in this case, show, without contradiction, that an infant, by the conduct of a person who procured himself to be made her guardian, has been deprived of the whole of her inheritance: that this has been effected through the instrumentality of a court of law; and we are now to decide, whether the legal forms by which it has been accomplished, preclude redress.

<div style="text-align:right">NEW YORK.<br>Sept. 1826.<br>Gallatian<br>v.<br>Cunningham.</div>

*Moral view of the case.*

It is impossible to consider this question, without a strong anxiety to rescue the administration of justice from the reproach which it would seem to deserve, if we should be obliged to acknowledge that our courts may be rendered *the instruments of such injustice; and we must feel the greater regret, should we be obliged to decide that the wrong is without remedy, when we reflect that the injury arises out of the sacred relation of guardian and ward, which the courts themselves create.

[*376]

But it is the duty of a judge to control his feelings.  He is to administer law as he finds it established, and not as he may wish it were, or thinks it ought to be, in order to meet particular exigencies or hardships.

*A judge ought to administer law without regard to particular exigencies.*

It is to be considered, also, that, in this case, the question is not now between the guardian and his ward.  Rights of third persons intervene.  These persons insist, that however exceptionable the conduct of the guardian may have been, their title is valid; because they are purchasers from persons who had no notice that he who conveyed to them was guardian when he acquired his title.  If this be so, the appellants must be protected, although it be at the expense of another innocent party.

*Question affects third persons, appellants, claiming from purchasers who are alleged to have had no notice.*

*If so, the appellants should be protected.*

In my view of this case, there are many points which have been argued at our bar with great zeal and ability, that I do not think it necessary we should decide.  I shall not consider whether there be evidence that the proceedings of the supreme court were fraudulently conducted by the parties to the partition suit.  Neither does it appear to me to be necessary to decide on what day of the week the order for sale was entered, nor what would be the consequence, if it were entered on a Sunday.  My decision will rest on the single fact that the guardian was the purchaser.

*Many points argued, not necessary to examine.*

*Decision rests on the guardian being purchaser.*

NEW YORK, Sept. 1826.

Gallatian
v.
Cunningham.

If the purchaser under the partition sale had not been the guardian, I think his title could not be impeached on the ground that the proceedings in that suit were unwar rantable. In *Bennett* v. *Hamill*, (2 Sch. & Lef. 577,) Ld.

*Otherwise purchase could not be defeated.*

Redesdale says, " A purchaser under a judgment or decree, is not bound to look through all the proceedings, from the beginning to the end; and to see that they are right in all their parts. On the contrary," says he, "a purchaser has a right to presume that the court has taken the steps necessary to investigate the rights of the parties; *and has properly decreed a sale." This doctrine is maintained by our court of chancery, in the case of *De Riemer and Cantillon*, (4 John. Ch. Rep. 85.)

[*377]

But the purchaser under the partition sale was guardian; and let us, for a moment, suppose that he was the only party in interest before the court. Then the question would be, whether a guardian who purchases lands of his ward, under a sale to which he assents, can hold the property against the will or claim of his ward.

*A trustee cannot purchase and hold the subject of his trust, against the will of his cestui que trust.*

There is no principle better settled, nor one more calculated to defeat that cupidity which is so apt to seduce men from a disinterested and honest course, than that a trustee shall never be allowed to claim and to hold as a purchaser, property which was the object of his trust, against the will of the *cestui que trust*. Indeed, the just jealousy of the law carries the rule further. It will not permit an agent or attorney to hold, against the will of his principal or employer, anything which was in litigation, of which litigation he had the management.

*So of an agent or attorney, as to any thing which he litigates.*

The sale to the trustee or agent is not absolutely void; but may always be avoided by the *cestui que trust*, or by the principal, unless long acquiescence, with knowledge of their rights, warrants a presumption that they approved and ratified the sale.

*Distinction between the partition and order of sale, and order confirming sale.*

It is upon this ground that I take the distinction between the effect of the proceeding of the supreme court as to the order for partition and sale, and the order confirming the sale to William Erwin, who was the guardian. The partition and order for sale may be conclusive, but the con-

firmation not so ; at least not so conclusive as to preclude the ward from setting aside the sale. . The decree of the court of chancery, which refused to permit the guardian, or those claiming under him with notice, to have the benefit of the sale, is perfectly consistent with the proceedings of the supreme court, even supposing that they confirmed the sale to William Erwin, knowing that he was the guardian. The order of the court for partition is not disturbed, and the sale to the guardian is confirmed, so far *as we are bound to believe the supreme court could, or intended to confirm it ; that is, subject to the equity which the ward has to set aside the sale, within a reasonable time : so that the court of chancery may set aside the confirmation of the sale to the guardian, without conflicting at all with the supreme court. In the case of *Campbell* v. *Walker*, (5 Ves. 680,) the master of the rolls, speaking of a sale made by a trustee, a sale which was acknowledged to be perfectly fair, which was made at public auction, and to the highest bidder, uses language which courts should forever sound in the ears of all guardians and trustees : " I wish trustees to understand," says he, " that any trustee purchasing the trust property, is liable to have the purchase set aside, if, in any reasonable time, the *cestui que trust* chooses to say he is not satisfied with it. The trustee purchases subject to that equity."

[*378]

But it is said, that however this may be applicable to an ordinary trustee, it does not apply to this particular case of a guardian under our act for the partition of lands. In my opinion, if we attend to the reason of the rule, we shall find it more applicable to this case than to any other.

*Rule disqualifying a trustee, &c. to purchase, extends to a guardian ad litem under the act for partition of lands.*

He who undertakes to act for another, shall not, in the same matter, (says one of the books,) be permitted to act for himself. Now, throughout the proceedings in partition, the guardian undertakes to act solely with a view to the interest of his ward. If he may acquire an indefeasible title by a sale, he may be acting for himself. He may be endeavoring so to shape the proceedings, as that he may make a bargain out of the estate. Upon the report of the sale, the court is to look to the guardian for information,

whether or not it is to the interest of the ward that the sale should be confirmed. If the guardian does not dissent, but is silent, as he was in this case, a confirmation is a matter of course.

In Scotland, whenever there is a judicial sale, a person who is called an agent, is appointed by the court to ascertain, and to inform them as to the value of the property to be sold. In the case of McKenzie, (6 Ves. 630, note (b.) the British house of lords set aside, after the lapse of a [*379] *great number of years, a purchase under an order of sale made by the court of session, by one of these agents; the lord chancellor saying, that he who was interested by the court to instruct them how to sell, should not be permitted to acquire a title under the authority of the court.

We are, however, referred to a direct decision, as is said, of the supreme court, on the very point now under consideration. (Jackson v. Woolsey, 11 John. 446.) If I understand that case, it does not at all impugn the principles which the other cases, as it appears to me, so firmly establish; but the report of that case is not very perspicuous, and I am not very certain that I understand it. We have, in the report, the title to the proceedings in partition which were in question. It is stated that the infants appeared by William Gillspie, as their guardian. The sale is represented to have been to Matthew Gillespie; and yet it is certain, that both the counsel and court assume as a fact, that the sale was to the guardian. Again; I do not understand, that in this suit of Jackson v. Woolsey, the wards were endeavoring to set aside a sale to their guardian. The wards were the heirs of Jane Gillespie. The sale was the estate of the infants, which they had inherited from her; and under a commissioner's deed consequent on that sale, the defendant, Woolsey, claimed. The lessors of the plaintiff were the heirs of James Neely. Now, if in Jackson v. Woolsey, it was not the wards who were endeavoring to set aside the sale to their guardian, then the doctrine of that case is entirely coincident with other cases on the subject: for it is admitted, that a sale to a guardian or trustee is not absolutely void, but is only

voidable: and, unless fraudulent, can be impeached by no one but a ward, or a *cestui que trust.*(a)

*But if we are to understand the supreme court as deciding, as a broad and general principle, that "the sale to the guardian conveyed a title to him which could not be impeached by the ward, because there was no fraud, and because the sale was public to the highest bidder, and made by the commissioners, according to the order of the court," then I feel myself constrained to dissent from that decision.

I hope, that in any thing I shall ever say or do, I shall manifest the unfeigned deference I feel for the members of the court which pronounced the decision in the case mentioned. But we are to take care that our respect for any other tribunal, does not lead us to forget that this is a court of appeal, and that it would be a mere mockery if any other adjudications than those pronounced here, were to have more influence than belongs to the abilities, learning and wisdom of those to whose judgments we are referred.

The question whether a trustee, guardian or agent can, by purchase, acquire an indefeasible title to property to which his trust, guardianship, or agency relates, is one upon which we are not distracted with a contrariety of opinions. I have looked with diligence, for all the cases reported which touch this question. Most of those decided in England, are referred to by Maddock, in his chapter on frauds. (1 Mad. 111, last ed.) I think I may venture to say there is not one single case, either in the English or our own books, (unless *Jackson* v. *Woolsey* be an exception,) which does not support the general rule, as I have above stated it to be.

But it is said it may be very injurious to an infant, if the

(a) Beside; the case was on the law side. Is not a fair purchase by a trustee, of the subject of his trust, valid and binding at law, even as between him and his *cestui que trust?* Can it be avoided, except in a court of equity? The court decide, in terms, that the deed, not being fraudulent in fact, *was valid in law.* They do not pretend to say how it would be viewed in equity,

NEW YORK, guardian be, in no case, allowed to purchase and hold the
Sept. 1826.
property of his ward. The law, however, has provided
Gallatian
v.          against this inconvenience. A trustee or guardian may
Cunningham. make a special application to the court of chancery, stat-
A trustee or ing why it would be to the interest of his ward to permit
guardian may him to purchase, or to permit him to hold property which
purchase un-
der a special he has purchased. His statement must be judicially in-
decree of chan-
cery. Or his vestigated; and, under a decree founded upon this inves-
[*381]      tigation, * permitting the guardian to purchase or to hold,
previous pur- no doubt, he may acquire an unimpeachable title. This is
chase may be
confirmed in very different from allowing a guardian to purchase in vir-
this way.
tue of an order and confirmation under our partition act,
where there is no investigation as to the interest of the
ward; where no intimation is given to the court that the
guardian and purchaser are the same person, and where,
ninety-nine times out of a hundred, they would have no
knowledge of this fact.

The ward    As has been said, the ward may confirm the sale, or
may confirm
the sale by lose the right to question it, if there be no objection made
delay; but has to it in a reasonable time. I will not stop to inquire
not done so in
this case, by whether there was any acquiescence of the ward in this
delay or other-
wise.       case. The moment she came of age, she complained of the
injustice of her guardian's proceedings; and it would be
cruel to construe her acceptance of the mortgage from
Mattison, the only fragment of her patrimony which re-
mained, as a confirmation of her guardian's purchase.

The guar-   If, then, the guardian was now the party in interest be-
dian's title in
this case, as fore us, and he alone was to be affected by our decision,
between him I hope we should not hesitate for a moment to say, that
and his ward,
was good for his title against the claim of his ward was good for noth-
nothing.    ing. I hope we shall adhere, with unrelenting severity,
to the rule that a guardian cannot acquire, by purchase,
(unless by the means I have before mentioned,) an inde-
feasible title to property, the care of which is the purpose
of his office.

Right of the  But the appellants contend that they are purchasers;
appellants,
purchasers or that is to say, that as to the mortgage given by Erwin to
assignees ex- Wood and Wardell, they hold that mortgage as their as-
amined.
signees. If they are purchasers, they can be in no better

situation than Erwin himself would be, unless they estab- NEW YORK,
lish in a legal manner, that Wood and Wardell had no ————————
notice, when they took the mortgage from Erwin, that he Gallatian
derived his title under the sale in the partition suit in Cunningham.
which he appeared as guardian of the respondent. If They must
Wood and Wardell had notice in any way that this was establish, in a
the title of Erwin, then they knew, as was said in the case legal manner,
*of *Campbell* v. *Walker*, that he took the property subject [*382]
to the equity, to have the purchase set aside. Then we signors had no
are to decide, whether Wood and Wardell are not, ac- notice.
cording to rules which govern in a court of equity, to be If they have
considered as having had notice, when they took the mort- up want of no-
gage from Erwin, that he was mortgaging to them pro- answer, they
perty which had been his ward's. To determine this ques- cannot supply
tion, we are to look to the pleadings only, and to inquire testimony.
whether the appellants have, in their answer, set up that If one takes
Wood and Wardell had no such notice. If they have not a defective title
made this allegation, they cannot supply this defect in their it is, *prima*
title by testimony. If a person takes a grant or convey- *facie,* bad in
ance from one having, himself, a bad or defective title, the the purchaser.
title is also, *prima facie,* bad or defective, in the hands of
the grantee. If it be not so on account of his being an in- him, or those
nocent and *bona fide* purchaser without notice; it is for claiming under
him, or those claiming under him, to maintain that he was that the pur-
such purchaser without notice; and if he, or those claim- without notice.
ing under him, do not do so, witnesses shall not be permit-
ted to do it for them.

If it be said, that the appellants might not know wheth- If the appel-
er Wood and Wardell had notice or not, they might, not- know, they
withstanding, set up by plea, if not by answer, want of no- might have
tice as the ground of defence. They might, at least, have that their as-
stated unequivocally, that they did not know that Wood signors had not
and Wardell had this notice. But instead of this, they have stated
say in their answer, "that, whether or not Wood and their want of
Wardell, at the time they received the mortgage from Er- answer.
win, had notice of all the charges, circumstances, and al-
legations contained in the said bill of complaint, they can-
not set forth from knowledge or information." "If a pur-
chaser," says chancellor Kent, in the case of *Denning* v.

NEW YORK, *Smith*, (3 John. Ch. Rep. 345,) "wishes to rest his claim
Sept. 1826. on the fact he must deny notice, although it be not charged
Gallatian in the bill. He must deny every circumstance from which
v.
Cunningham. notice could be inferred." Why must he do this? Be-

A purchaser cause want of notice is an essential part of the purchaser's
relying on title; and unless he, or those claiming under him, aver
want of notice,
[*383] that he had not notice, the title is defective. To *omit
must deny no- such an averment, is as fatal as if the party had omitted
tice, and every
circumstance to aver any other fact (as the death of an ancestor, for ex-
from which it ample,) essential to a perfect title.
may be infer-
red, whether      This being my opinion on this point, it is unnecessary
it be alleged or
not. to examine the testimony as to Wood and Wardell being
informed, when they took the mortgage from Erwin, that
his title to the mortgaged premises came from his ward.
Mr. Wood's testimony on this point, I think, is quite
equivocal. He denies that Wood and Wardell had know-
ledge that Erwin had purchased under the partition sale.
But he does not say that they had no information on this
subject. He adopts, as to this point, a circumlocution,
which leaves us in much doubt as to what we are to under-
stand from his testimony. "Neither he nor Wardell," he
says, "were informed of the manner, or from whence Er-
win had acquired possession of the land, nor by what con-
veyance, or by what authority he claimed title to the same."
But then immediately follows a part of the testimony of
Wood, which is calculated to create some doubts whether
he means to deny that he had any information when he
took the mortgage from Erwin, that Erwin was mortgaging
property which had belonged to his ward. Wood says,
"that at about the time of giving the mortgage, Erwin
stated that he was guardian to some children; but he
(Wood) did not recollect that the respondent's name was
mentioned." Then comes this very qualifying part of
Wood's testimony, to wit, "that he had but a faint recol-
lection of the conversation that passed between him and
Erwin on the subject."

I have referred to this part of the testimony, because I
think it illustrates the good sense of the rule, that a party
who means to rely on want of notice, either to himself or

to any other, must himself aver that there was no notice; or, at least, state, that according to his knowledge, information and belief, there was none. I think this case exemplifies the propriety of not leaving the question to be decided by testimony, independently of any allegation of the party himself. Considering the relationship of the appellants to Erwin, and the intimate connection of some *of them with him, how satisfactory would have been a declaration from them on oath, that they had no information or belief, that when Wood and Wardell took the mortgage in question, they were informed that Erwin was mortgaging to them property which had been his ward's.

NEW YORK,
Sept. 1826.

Gallatian
v.
Cunningham.

[*384]

For these reasons, I think we must consider that Wood and Wardell had notice of the nature of Erwin's title. As to the appellants, if that be of any importance, they unequivocally admit the fullest notice to themselves when they took the assignment. Though this may not affect the law of the case, yet when we add to this admission, that it appears they also knew that Erwin was old and poor, and unable to make his ward recompense for the inheritance of which he was despoiling her, and that the sale to Erwin was for greatly less than the property was worth, there must be less reluctance in giving a decision which will defeat the claim of the appellants.

Inference is that the assignors had notice.

I shall not extend the reasons for the opinion I shall give in this case, by any observations as to the mortgage to Gallatian. The principles which I have adopted as the mortgage of Wood and Wardell, apply to the other.

Whether the appellants, having taken their security for a precedent debt, and whether, as assignees of a mortgage, they can be considered as purchasers, are questions which I do not think it necessary to discuss.

Nor do I at all enter into the inquiry, whether there be proof that there was fraud in conducting the proceedings in partition. Consistently with my opinion, it may be assumed, that there was the utmost good faith in all the parties to that suit. I wish to establish as a principle, and mean to do it, so far as my opinion can establish anything, that if a guardian purchases the estate of his ward, with-

A ward may, within a reasonable time, claim to set aside a fair purchase made by his guardian, as against every one except a *bona fide* purchaser, un-

NEW YORK, out the special permission of a court, the sale may be set
Sept. 1826.

Gallatian
v.
Cunningham.

The bill against the respondent should be dismissed.

And the appellants should pay the costs of the court below and of this appeal.

*less the purchase was under an order of court for a sale to the guardian.*

aside while the property is in the hands of the guardian, on the application of the ward, within a reasonable time; and if the guardian makes a conveyance to another person, the property may be claimed by the ward in the hands of such person, unless the holder places himself in such [*385] *a situation, as that a court of equity may consider him a *bona fide* purchaser without notice.

The only matter that this court can decide on these original and cross-bills is, whether the appellants are entitled to foreclose the mortgage to Wood and Wardell, and the mortgage to Gallatian, according to the prayer of the original bill. We can say nothing as to the shares of Margaret and John Cunningham, because they are not parties to the record. Nor can we say any thing as to the new title set up by John Erwin and Abraham Wood, in their answers to the cross bill, under deeds to them from William Erwin, in 1818. Neither was it in the power of the court below, nor is it now in our power to say to what relief the respondent is entitled. All we can do is, to decide whether the bill which brought her into court, shall be dismissed or not. My opinion is, that it ought to be so.

I concur with the chancellor in his decree as to costs, and am also of opinion that the appellants must pay the costs of the appeal.

On the above opinions being delivered, the court voted unanimously for affirmance; but they declined embodying in the decree the grounds upon which they were for affirmance, though this was moved.

WHEREUPON,

It was *ordered, adjudged and decreed,* that the decree of the court of chancery, against which the appeal was brought, be in all things affirmed; and that the appellants pay to Catharine Cunningham her costs in this suit, to be taxed, &c., with the usual order to remit, &c.