PETITION FOR A REHEARING
BY J. J. CRITTENDEN, Esq.
The counsel for appellee ventures, with great deference, to suggest to the court, that in the opinion delivered in this case, there is some little inaccuracy in the statement of facts, and, as he humbly conceives, some error in the conclusions of law. Inaccuracies and errors scarcely to he avoided in a case so perplexed without the most laboured and minute investigation.
The opinion of the court in the recital of the will of James Mercer takes no notice of, but entirely omits, the name of John F. Mercer, and the deviso to him. The fact thus omitted is one of primary importance in the case.. There is this other inaccuracy in the statement of the case by the court, and it may not be altogether unimportant. In the opinion of the court, it is. stated that the patent for the land in question, was issued to James Mercer, ‘«in trust for the devisees of Alexander Dick.”- The patent upon. its. face is expressed to be to “James Mercer as devisee and trustee of Alexander Dick.”’
The court “is unable Jo perceive the process of? reasoning; by which the title either legal or equitable can he. ascertained to have been in. Patton, Hack *550 ley and Lee, by virtue of the deed of conveyance made to them by Mary Feyton, (by an agent,) John F. Mercer and' Charles C. Taliaferro.” And for this delect of title, as the appellee claims under Fat-ton, filackley and Lee, the court had decreed that the sale made by (lie appellee to the appellant should be cancelled. The counsel for the appellee is strongly persuadid that by that deed, both/the legal and equitable title was vested in Fatton, Hackiey and Lee
By the patent to James Mercer, he was vested with the legal title to tito land in question; by his will made in 1701, after a devise of Iris Whole estate to Garnett, and Harrison in trust for the use of his children &c. he devises the land in question to his son John F. Mercer, by the residuary- clause thereof. And upon their refusal and renunciation of the trust, the legal title, which would otherwise have vested in Garnett and ffamson, passed to the devisees respectively, for the portions of the estate devised to them severally; each one holding the part devised to him, subject to the payment of the debts and legacies charged upon it. The legal title, and the beneficial interest became united in the same persons, and tinless they can be considered as holding in trust for tlietnselves, each must be considered its holding’by a perfect title to whatever was given ro' him by the will. And the estate of the testator will pass precisely as if there had been no devise to trustees. This construction does not at all affect life rights of parties under the will, nor the power of a court of chancery to effectuate the purposes and objects which the testator intended to accomplish by means of the trust'. Nor is it conceived that this power of a court of chancery in any degree conflicts wiib the opinion, that upon the renunciation of the trust by tito trustees, the., title passes by the will as if there had been no devise to trustees. The idea, that the legal title and the use,. can be vested at the samo time, .and in the sama parlies, ami yet remain distinct and separate, is believed to be incompatible with the rules of law; they will, no doubt, continue to hold (he estate subjeetjo all the incumboucie^amS charges imposed on *551 í.t, ami which were intended to be secured and ofiecttul, by the separation of the legal and equitable title, but whenever they meet in the same person persons, the title is complete, and the use becomes executed to the full extent of each party’s right. If this be correct, upon Use renunciation of the trustees, John F. Mercer became legally entitled, or rather Was vested with the legal title to rhe land in qmstion which was devised to him as before stated by the residuary clause of the patentee’.s, James Mercer’si will. And if so, the legal tille undoubtedly passed to Patton ííaekley and Leo by the deed in which (lie said John F. Mercer was one of the grantors.
But, the counsel for the appellee does si ill more confidently believe that the entire equitable title passed to said Patton, Rackley and Lee by virtue of said deed. According to the- opinion of the court,: James Mercer held the legal title, for the use of Charles G. Taliaferro. John Fenton Mercer and Mary Taliafei-ro. They were entitled to the whole equitable interest, subject to this limitation as to Alary's interest, that if she died without marrying and having children, it should pass to the said Jas. Mercer and Chs. C. Taliaferro. By the will of Jantes Mercer, he .undoubtedly passed all his equitable rights and interests, whether in possession or remainder, to tire laud in question to John F- Mercer; and the. said J. F. Mercer was thereby equitably entitled to his father’s remainder in Alary Taliaferro’s interest, whenever (he contingency should happen upon which it was to vest. If lie took any equitable interest- even under his father’s will, he took (his. It cannot be -pretended that this possible or contingent interest was not deviueabie, nor that (he words of Jantes Mercer's will, are not broad and comprehensive, enough to embrace it. After the death of James Mercer, which happened before 1798, the whole equitable interest- in Cue land in question, both present and future., was vested’in Charles C. Taliaferro, Mary Taliaferro, and John F. Mercer; the. said Charles and John being entitled to the share of Mary, in the event of dying without, a child. And in this situation of the estate *552 a]J tiifee of them in tile year 1796, (the said Mary hy her agent, as the deed recites,) join in a conveyaiice of the land to Patton, Hackiey and Lee.
The deed was executed without authority from Mary; she afterwards, as it is admitted died without a child, and her portion or interest, according to the devises and limitations in the wills of Alexander Dick and James Mercer passed to Ghs. C. Taliaferro and John F. Mercer. And surely their deed, considering it as unexecuted by ? - ary Taliaferro, otherwise Mary Peyton, passed to Patton,Hackiey and Lee, all the interest, cither present or future, which they then had to the land in question. And when upon the death of Mary, which happened after the «late of the deed, her interest devolved upon Cbs. C. Taliaferro and John F. Mercer, it must certainly be considered as enuring to the confirmation of their deed and to the, benefit of their alienees. Patton, Hackiey and Lee; in whom by this clear process, all the scattered lines of this etpiity became concentrated. And if this be so, who after such a lapse of’ time, after the long possession can question their title? it is said to be defective, but who can impeach or dislurb it? Can the creditors or legatees of James Mercer? Would they be heard to set up any pretensions after a lapse of new about tbirfy-iivo years since his death? Would the heirs of James Mercer be permitted to disturb it? And upon what grounds? .John F. Mercer, one of them would be estopped by his deed; and as for the other heirs, holding, if any thing, d mere barren title in trust for him, after payment of .debts and legacies, upon what pretext could they assert, any right,.or contest the title of the appellee? The debts and legacies must all be presumed to have been long-ago paid, or are barred by the length of time, and the trustees could, therefore, have no pretext for setting up any claim. If Charles G. Taliaferro and John F. Mercer were now alive and in.(he possession ami enjoyment of the estate could the other heirs of James Mercer recover in ejectment against them, even supposing (hose heirs originally took the legal title- and held it as trustees for the same purposes that the renouncing frusbr:’- *553 and executors of Janies Mercer would have held it? If is believed they could not recover in such a case.; that after such a length of time, and the irresistible presumption that all the purposes of the ¡¡¡trust were fulfilled, the law would infer and presume a Surrender of the legal title.
Inferences and presumptions which are indulged in, not so much on account of the intrinsic probability of their truth, as because the policy and peace of society requires that they should be indulged. But if not prevented from a recovery by the presumption of a surrender of the iegal title, would a court of equity ever permit, them to enforce snob a recovery? Certainly it would tiot, unless it were for the purpose of carrying into effect some of the provisions of James Mercer’s will, for the payment of debts and legacies; and we consider it incontestable that it is by far too late now, to setup or assert any claim to such debts or legacies.
If neither the heirs, creditors or legatees of Jas. Mercer could successfully question the title, who else stands in an attitude to do it? A mere stranger could not surely set up, after such a lapse of time, the antiquated and barren title of the heirs of James Mercer, or the stale claims of his satisfied and uncomplaining creditors and legatees, to bar any ejectment that might be brought, founded upon the tille of J. F. Mercer and Chs. C. Taliaferro. All the presumptions which could be indulged in their favor, il they were in possession, ought to be more freely and forcibly indulged in favor of bona fide and innocent purchasers from them. If there be none who could successfully question the title of the appellant, ought he to be permitted to question it, and to bring into controversy with bis vendor, a title in bis bands unquestioned, and unquestionable by all the world besides,’ and to evade bis fair contract of purchase, upon the mere ground of some defect discoverable in a mere abstract view of the evidences of title, but which defect can never endanger the loss of the land, or be made to operate to the, prejudice of the appellee? There has been a continued possession under the title of Patton, Uackley and Leo, from the year 1804, down to the *554 present time, as appears from the testimony in th& case.
A conveyance from trustees may be presumed in much less than 20 years; as where trustees are directed to convey &c. for as it was the duty of the trustees to convey, to which they might have beets Compelled by a court of equity, it ought to be presumed that they had done their duty. Syburn vs. Slade. 4 Term Rep. 682. 11 John. Rep. 456. On the same principle that what ought to have been done shall be presumed to have been done, a rexouVeyanceof the legal estate may be presumed after a length of time, and when the purpose for which it Was conveyed has been answered, Hillary vs. Waller, 12 Ves. Jr. 239.
Upon this view of the subject, the counsel of the appellee is thoroughly persuaded, hnleed his mind cannot resist the conviction, that by the deed of 1796 to Patton, Haekley and Lee, they were invested with both the legal, and the entire equitable title to the land in question: and he flatters himself that the court will upon mature consideration concur in these opinions, and .find sufficient reason for changing the dec ision which has been rendered. He, therefore, with the most respectful confidence, solicits a re-hearing and reconsiderction of the cause.
The few moments, which the expected adjournment of the court, has left for the preparation of this petition, will be regarded, it is hoped as some apology for its acknowledged imperfections, and particularly for its being unaccompanied with any citation of authorities.
The Counsel of the appellant presented the following: